IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARK O. SCHMIDT,                )<br>                                              )<br>        Plaintiff,                        )<br>                                              )<br>v.                                           )<br>                                              )<br>GPI-KS-SB, LLC dba BARON BMW,  )<br>                                              )<br>        Defendant.                     )<br>_____)  | CIVIL ACTION<br><br>No. 13-CV-2381-KHV |

**MEMORANDUM AND ORDER**

Mark O. Schmidt brings suit against GPI KS-SB, Inc. d/b/a/ Baron BMW ("Baron")[1] for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and retaliatory discharge under the Kansas Workers' Compensation Act, K.S.A. § 44-501 et seq. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #20) filed April 4, 2014. In response to defendant's motion, plaintiff concedes that summary judgment is appropriate on the ADEA, Title VII and Kansas Workers' Compensation Act claims. See Plaintiff's [Response] Brief To Defendant's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #36) filed May 23, 2014 at 2-3, 5. Plaintiff's only remaining claims are for discrimination and retaliation under the ADA. For the reasons set forth below, the Court finds that defendant's motion should be sustained.

---

[1] In its answer, defendant states plaintiff incorrectly identified it as GPI-KS-SB, LLC dba Baron BMW and Baron Automotive Group. See Answer And Affirmative Defenses To Petition (Doc. #5) filed August 22, 2013 at 1.

## I.  Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on suspicion, and

he may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## II.   Facts

The following facts are either uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.

Baron sells and services BMW automobiles in Merriam, Kansas. In 1984, plaintiff began work as an apprentice mechanic with Hafkemeyer BMW, Baron's predecessor. Hafkemeyer BMW promoted plaintiff to Technician in the service department soon thereafter. In April of 2005, plaintiff injured his left elbow at work. Plaintiff's injury was treated conservatively until April of 2006, when he had surgery. Following his surgery, plaintiff returned to work and Hafkemeyer BMW assigned plaintiff to the position of Quality Control Manager.

### A.   Baron's New Ownership And Management

On January 10, 2007, GPI KS-SB, Inc. purchased the dealership.[2] Plaintiff submitted an employment application, and defendant retained plaintiff in the position of Quality Control Manager. In November of 2007, Chuck Davis became Service Director and directly supervised plaintiff.

In February of 2009, Davis recognized that many of plaintiff's duties as Quality Control Manager were consistent with the title of Shop Foreman and promoted plaintiff to that position.

---

[2]   It is unclear when the dealership began operating as Baron BMW.

3

On March 10, 2009, plaintiff acknowledged receiving a copy of the Employee Handbook dated January 15, 2009 and agreed to familiarize himself with the contents. The Employee Handbook contained a section titled "Equal Employment Opportunity," which instructed plaintiff to notify his human resources representative if he needed an accommodation to perform the essential functions of his job. Some time after December of 2010, plaintiff told Davis that he had limitations regarding the use of his left arm. Plaintiff did not specify the limitations.[3] Plaintiff is right-handed.

### B.     Plaintiff's Performance As Shop Foreman

During the two years following plaintiff's promotion to Shop Foreman in 2009, Davis became increasingly concerned about plaintiff's performance. Davis believed that plaintiff often approached his job from the perspective of a technician rather than a member of management, i.e. plaintiff often viewed a proposed change in methodology or procedure from the perspective of how it might impact the technicians rather than how it might benefit the dealership or the corporation as a whole. Davis believed that plaintiff's long tenure as a technician may have led him to become too "buddy-buddy" with the technicians for him to perform effectively in a management role. From other employees, Davis understood that plaintiff often complained to technicians about conversations with Davis regarding department operations. Such complaints were inappropriate in plaintiff's management role. Davis further understood that plaintiff often complained about the BMW engineer assigned to assist and advise the technicians, argued with the BMW engineer about recommendations and spread discontent among other employees to the

---

[3] On June 25, 2010, plaintiff gave defendant a return-to-work release, indicating that he had a 25 to 30 pound lifting restriction for reasons unrelated to his left arm. The release contained no other work restrictions. On December 31, 2010, following treatment for a finger injury which he had sustained at home, plaintiff gave defendant a return-to-work release that contained no work restrictions at all. Plaintiff provided no other return-to-work releases.

4

detriment of the dealership. Davis concluded that plaintiff was unable or unwilling to approach his assigned management duties from the perspective of improved overall efficiency for the company and that plaintiff refused to promote buy-in for unpopular decisions among the technicians. Therefore, in April of 2011, Davis decided to remove plaintiff from the Shop Foreman position.

### C.     Plaintiff's Reassignment

In April of 2011, Davis began to discuss with plaintiff a transition from the Shop Foreman position to a position that would work for both plaintiff and defendant. Davis informed plaintiff that he intended to move him into a light-duty position on the Internal Team in the Service Department. The Internal Team is primarily responsible for pre-delivery inspections of new cars and pre-certifications of incoming used cars. The inspections required plaintiff to go through a checklist of items relating to each vehicle. Davis said that he would give plaintiff around 30 hours per week of "flag hours" (predetermined hours allocated to perform an inspection or repair) and approximately 10 hours per week to continue performing regular maintenance tasks. To fill plaintiff's time, Davis intended to assign other light-duty work as needed.[4] Davis did not present a pay plan at that time, but told plaintiff that he would strive to schedule enough work for plaintiff to keep his compensation as close possible to his Shop Foreman salary.[5]

---

[4]     None of the light-duty work would have involved lifting more than 30 pounds.

[5]     Plaintiff agrees that nothing would have prevented management from assigning him the lighter duty work in the proposed Internal Team position, and plaintiff assumes they could "figure [it] out" if not much light work was available. Schmidt Dep. 134:4-8, exhibit B to Defendant's Motion For Summary Judgment (Doc. #20).

5

### D. Plaintiff's Departure From Baron

On May 23, 2011, Davis informed plaintiff that defendant was hiring a new Shop Foreman and reassigning plaintiff to a position on the Internal Team. Plaintiff told Davis that he could not "work on vehicles anymore as far as turning the wrenches and the stress and the pulling and breaking things loose and stuff like that." Schmidt Dep. 120:6-23, exhibit B to Defendant's Motion For Summary Judgment (Doc. #20). Davis responded by assuring plaintiff that the Internal Team position was a light-duty position and that Davis would work with plaintiff to address any problems.

On June 1, 2011, plaintiff's replacement began working. Plaintiff worked with him for two weeks to orient him to the shop. On June 16, 2011, plaintiff dropped off Family Medical Leave Act ("FMLA") paperwork at defendant's human resources office, requesting a medical leave. Plaintiff's Certification of Health Care Provider form, dated June 14, 2011, stated that plaintiff would probably need leave for four to six months because he would be "[u]nable to work due to anxiety from [h]ostile work environment."[6] Defendant approved 12 weeks of FMLA leave for plaintiff effective June 17, 2011.

Other than his discussion with Davis in May of 2011, plaintiff never discussed with anyone at the dealership his alleged inability to work in the Internal Team position. After June 16, 2011, plaintiff did not communicate with defendant regarding his willingness or ability

---

[6] Certification of Health Care Provider ¶¶ A.1, A.3, exhibit B-9 to Defendant's Motion For Summary Judgment (Doc. #20). The paperwork also noted that "Pt has relayed stories of Hostile work environment leading to anxiety Requiring mental Health Eval & Treatment." Id. ¶ A.4. (errors in original).

6

to return to work.[7] Defendant has retained plaintiff on leave of absence status since June 17, 2011.

### E.   Plaintiff's Exhaustion Of FMLA Leave And The ADP Notice

Plaintiff exhausted his 12 weeks of authorized FMLA leave on September 9, 2011 but did not return to work.[8] More than two months later, on November 29, 2011, plaintiff received a notice through defendant and its benefits service provider, ADP Benefit Services ("ADP Notice").[9] The ADP Notice stated that if plaintiff did not return to work after his 12 weeks of authorized FMLA leave, his welfare benefits would be subject to defendant's standard leave of

---

[7]   Between June 20 and 27, 2011, plaintiff had two conversations with Davis concerning certain tasks plaintiff may have assisted with before his last day of work on June 16, 2011. Plaintiff also spoke with defendant's human resources representative on one or two occasions in the weeks immediately following his departure. During these conversations, plaintiff discussed only his insurance coverage and FMLA paperwork.

At some point in June of 2011, Kerry Laws, the West Region Human Resources Director responsible for defendant's dealership, called plaintiff to discuss his FMLA leave. During this call, plaintiff did not mention that he had a disability or that he needed an accommodation to perform the essential functions of his job. Plaintiff tries to controvert this evidence by stating that he never met Laws before he left defendant. This does not controvert the fact that Law talked with plaintiff by telephone in the month of June.

[8]   In early September of 2011, plaintiff moved to Lowry City, Missouri, which is approximately 100 miles from the dealership. When he moved to Lowry City, plaintiff did not intend to return to work for defendant. In October of 2012, plaintiff began working as a janitor for Remer Meat Company in Clinton, Missouri. Plaintiff resigned from that position in March of 2013.

[9]   Plaintiff alleges defendant mailed the ADP Notice. See Plaintiff's Response (Doc. 36) at 3 ("plaintiff received on November 29, 2011 in the mail an envelope of defendant containing information from the employee benefit provider"). Defendant asserts that ADP Benefit Services mailed the ADP Notice. See Defendant's Reply Memorandum In Support Of Its Motion For Summary Judgment (Doc. #37) at 13. The record is unclear because the return address on the ADP Notice is illegible. See ADP Notice, exhibit B-2 to Defendant's Motion For Summary Judgment (Doc. 20). For purposes of summary judgment, the Court will assume that defendant mailed the ADP Notice.

absence and attendance policies. The ADP Notice also warned that plaintiff's failure to return "may result in termination." The ADP Notice was postmarked November 11, 2011.

### F. The Charge Of Discrimination And Lawsuit

On May 21, 2012, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). In the charge, plaintiff said that when it removed him from his position as Shop Foreman and reassigned him to the Internal Team position, defendant had discriminated against him because of age and discriminated and retaliated against him because of disability.[10] Plaintiff alleged that by the reassignment, defendant constructively discharged him.[11] On April 5, 2013, the EEOC issued its dismissal and notice of rights. On July 3, 2013, plaintiff filed this lawsuit in the District Court of Johnson County, Kansas. Defendant removed the matter to this Court on August 1, 2013.[12]

---

[10] In his deposition, plaintiff testified that he believed the reason for the alleged discrimination was Davis' "insecurity about his job" and said that "it was personal." Plaintiff stated that the basis for his "retaliation" claim was that plaintiff was not giving Davis "answers to certain things he would ask me to do" and Davis believed plaintiff was not a loyal employee.

[11] In his deposition, plaintiff stated that because of the "way [Davis] treated me and talked to me and threatened me," he was constructively discharged.

[12] On September 25, 2013, plaintiff submitted an application for disability benefits to the Missouri Department of Elementary & Secondary Education, Office of Adult Learning and Rehabilitation Services, which cooperates with the Social Security Administration in the processing of claims for disability benefits. Plaintiff testified that he has been unable to perform any kind of work since September 25, 2013.

Defendant states that it cannot be liable for damages incurred after the date plaintiff applied for disability benefits. Plaintiff asserts that it is premature for the Court to make such a holding because the Social Security Administration has not determined whether plaintiff is entitled to disability benefits. Because defendant is entitled to summary judgment on other grounds, the Court will not decide this issue.

### III.     Analysis

Plaintiff alleges that defendant discriminated and retaliated against him in in violation of the ADA.  See Pretrial Order (Doc. #19) filed March 25, 2014 at 14-25, ¶ 6.a.(3).  Plaintiff alleges that his disability arose from his 2005 injury to his left arm and shoulder.  See id. at 5, ¶ 3.a.  Plaintiff alleges that by removing him from a position that served as an accommodation and offering him only a position that he said he would be unable to perform, defendant discriminated against him because of disability.  See id. at 6, ¶ 3.a.  Plaintiff alleges that because he had held an accommodated position for several years, defendant's conduct was retaliatory.  See Plaintiff's Response (Doc. #36) at 5.

#### A.     Timeliness Of Plaintiff's Claims

Defendant asserts that all of plaintiff's claims are time-barred because they arise from plaintiff's reassignment from Shop Foreman to the Internal Team, and that plaintiff had notice of the reassignment more than 300 days before he filed his charge of discrimination.  Defendant's Memorandum In Support Of Its Motion For Summary Judgment (Doc. #21) filed April 4, 2014 at 15.  Plaintiff contends that his claims actually arose when defendant mailed the ADP Notice, which stated that his employment could be terminated if he failed to return to work after his FMLA leave.  Plaintiff's Response (Doc. #36) at 2-3.  Plaintiff filed his charge of discrimination on May 21, 2012.  Plaintiff received the ADP Notice on November 29, 2011 – 174 days before he filed his charge of discrimination.  The ADP Notice was postmarked November 11, 2011 – 192 days before plaintiff filed his charge of discrimination.

Under Tenth Circuit law, exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the ADA.  McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1105 (10th Cir. 2002); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996).  Plaintiff must file an

9

EEOC charge within 300 days of defendant's allegedly unlawful action. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e).[13] In determining the timeliness of a claim, a cause of action accrues on the date the employer notifies an employee of an adverse employment action. See Davidson v. American Online, Inc., 337 F.3d 1179, 1187 (10th Cir. 2003).

In April of 2011, Davis told plaintiff that he was going to reassign him, and on May 23, 2011, Davis told plaintiff that he had hired plaintiff's replacement. Thus, by May 23, 2011 at the absolute latest, plaintiff had notice that defendant was going to replace him as Shop Foreman. That same day, plaintiff complained that he would be unable to "work on vehicles anymore as far as turning the wrenches and the stress and the pulling and breaking things loose and stuff like that." Plaintiff filed his charge of discrimination on May 21, 2012 – 364 days later. Because plaintiff knew of the alleged discriminatory action on May 23, 2011, any claims arising from the alleged demotion are untimely. See id. at 1184.

Plaintiff argues that defendant notified plaintiff of a separate discriminatory act – without specifying the actual alleged discriminatory act – through the ADP Notice. On November 29, 2014, plaintiff received the ADP Notice in the mail. This date is 174 days before plaintiff filed his charge of discrimination. Therefore, claims that arise from defendant's mailing of the ADP Notice would be timely. Nonetheless, as shown below, defendant is entitled to summary judgment.

---

[13] In states where a "state agency has authority to investigate employment discrimination ("deferral states"), Title VII[, and by incorporation, the ADA,] requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice." Davidson, 337 F.3d at 1183, n.1.

### B. Plaintiff's ADA Claims

Plaintiff alleges that defendant discriminated and retaliated against him in violation of the ADA. See Pretrial Order (Doc. #19) at 14-25, ¶ 6.a.(3). Plaintiff may establish that defendant discriminated or retaliated against him under the ADA either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 824 (1973). See Johnson v. Weld Cnty, Colo., 594 F.3d 1202, 1217 (10th Cir. 2010); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997); Williams v. Widnall, 79 F.3d 1003, 1005 & n.3 (10th Cir. 1996). Here, plaintiff relies on the indirect method of showing discrimination and retaliation.

Under the McDonnell Douglas burden-shifting framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case for each claim. Morgan, 108 F.3d at 1323. If plaintiff does so, the burden shifts to defendant to offer a legitimate nondiscriminatory reason for its employment decision. Id. If the employer comes forward with a nondiscriminatory reason for its actions, the burden reverts to plaintiff to show "a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." Id. Demonstrating pretext gets plaintiff over the hurdle of summary judgment. Id.

#### 1. Discrimination Under The ADA

To establish a prima facie case for discrimination under the ADA, plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) he is qualified, that is, he is able to perform the essential functions of the job with or without reasonable accommodation; and

11

(3) defendant took an adverse employment action against plaintiff because of his disability. See White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995). Plaintiff asserts that "[d]efendant discriminated and retaliated against Plaintiff, in violation of the [ADA], because of a disability (Count I of his Complaint)." See Pretrial Order (Doc. #19) at 14-15.[14] Plaintiff appears to argue that by replacing him as Shop Foreman and offering him only the position on the Internal Team, defendant discriminated.[15] Plaintiff asserts that he told Davis about his limitations, presumably through his comment that he could not "work on vehicles anymore as far as turning the wrenches and the stress and the pulling and breaking things loose and stuff like that." Schmidt Dep. 120:6-23, exhibit B to Defendant's Motion For Summary Judgment (Doc. #20). Plaintiff claims that Davis discriminated against him by failing to inquire further. Thus, plaintiff frames his discrimination claim as a claim of failure to accommodate. Plaintiff

---

[14] Count I of the Complaint summarily alleges that

> The defendant by its Service Director, Chuck Davis, engaged in discriminatory employment practices against the plaintiff with malice or reckless indifference to plaintiff's federally protected employment rights by his actions as alleged in this petition and exhibits hereto attached including but not limited to retaliation for plaintiff exercising his right to accommodated employment when known by the employer to have an employment disability.

Petition For Damages For Defendant's Age And Disability, Discrimination Of Plaintiff In His Employment With Defendant And Intentional Retaliation Toward Plaintiff Because Of His Disabilities (Doc. #1-1) filed Aug. 1, 2013 at 3, ¶ 11 (originally filed in Johnson County, Kansas, District Court on July 3, 2013) (errors in original).

[15] The pretrial order does not explicitly articulate the factual basis for a claim of discrimination under the ADA. The gist of plaintiff's complaint, however, is that defendant demoted him to an on-the-line mechanic position which plaintiff and defendant both knew that he could not do, i.e. that defendant took adverse employment action by demoting him.

offers no evidence that after May 23, 2011, he discussed with defendant any inability to work in the Internal Team position.[16]

Plaintiff's discrimination claim arises solely from his alleged demotion and immediate informal complaint, and it is time-barred for the reasons stated above.[17]  See Jones v. United

---

[16]  In his charge of discrimination, plaintiff stated as follows:

> [D]uring the time from June 17, 2011 and after 7-12-2011, I continuously requested that I be allowed to return to my previous position of Shop Foreman/Manager but I was not informed as to my employment status by the employer or any of its representative other than I was return to my employment as an on-the-line mechanic which I could not do and which I had told Mr. Davis, The Service Director, many times before.

Charge Of Discrimination at 2 (errors in original), exhibit B-5 to Defendant's Motion For Summary Judgment (Doc. #20).  Without providing dates, plaintiff also noted that while he was on FMLA leave, he "repeatedly request[ed] information as to [his] employment status of an on-the-line mechanic and [his] request to be restored to [his] previous position of Shop Foreman/Manager with the accommodations that had previously been granted to [him] for the last 5 to 6 years."  Id. at 3.  Plaintiff has not presented any evidence or argument, however, that he requested accommodations after May 23, 2011.

[17]  The Court doubts that plaintiff's informal complaint actually requested accommodation because it did not request anything from defendant.  See Koessel v. Sublette Cnty. Sheriff's Dept., 717 F.3d 736, 744 (10th Cir. 2013) (as precondition to suit, employees have burden to request accommodation unless employer has foreclosed interactive process through policies or explicit actions).  Nonetheless, even if plaintiff's comment did effectively request accommodation, his claim is time-barred.

Plaintiff argues that his receipt of the ADP notice was a discrete adverse employment action which re-set the clock to exhaust administrative remedies.  Plaintiff's Response (Doc. #36) at 1, ¶ 60.  Plaintiff's suggestion that the ADP Notice was "final" does not change the fact that plaintiff had initial notice of the reassignment and alleged demotion by May 23, 2011 at the latest.  See id. at 3.

Plaintiff offered no evidence that while he was on FMLA leave, defendant was considering placing him in any position other than the Internal Team.  Furthermore, plaintiff offers no evidence that he requested any accommodation at all, much less within 300 days of the charge of discrimination.

Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007).  Therefore, defendant is entitled to summary judgment on plaintiff's ADA discrimination claim.

### 2. Retaliation Under The ADA

The pretrial order makes a conclusory allegation that defendant "retaliated against Plaintiff, in violation of the Americans with Disabilities Act," but it does not articulate the factual basis of any such claim or expressly identify what adverse action defendant took that was retaliatory.  Plaintiff's petition alleges that defendant retaliated against him in violation of the ADA for "exercising his right to accommodated employment when known by the employer to have an employment disability."  Petition For Damages For Defendant's Age And Disability, Discrimination Of Plaintiff In His Employment With Defendant And Intentional Retaliation Toward Plaintiff Because Of His Disabilities (Doc. #1-1) filed Aug. 1, 2013 at 3, ¶ 11 (originally filed in Johnson County, Kansas, District Court on July 3, 2013) (errors in original).  To establish a prima facie case of retaliation, plaintiff must show (1) that he engaged in an activity protected by the ADA, (2) that a reasonable employee would have found the challenged actions materially adverse and (3) a causal connection between the protected activity and adverse action.  EEOC v. C.R. England, Inc., 644 F.3d 1028, 1051 (10th Cir. 2011).

Before deciding whether plaintiff has set forth a prima facie claim of retaliation, the Court must first identify defendant's allegedly adverse action.  Liberally interpreting the petition, the pretrial order and plaintiff's brief, the Court identifies four potential adverse employment actions:  (1) defendant's alleged demotion of plaintiff; (2) defendant's alleged direct termination of plaintiff's employment; (3) defendant's alleged constructive discharge of plaintiff; and (4) defendant's alleged threat to terminate plaintiff's employment.  Plaintiff asserts that the ADP Notice communicated defendant's "final and discrete employment discriminatory act," but

14

plaintiff does not assert whether the notice communicated direct termination, contributed to his alleged constructive discharge or merely threatened termination. See Plaintiff's Response (Doc. #36) at 3, ¶ II.A, B. Regardless, as shown below, defendant is entitled to summary judgment on plaintiff's retaliation claim.

### a. Defendant's Alleged Demotion Of Plaintiff

Plaintiff claims that defendant retaliated against him by demoting him from the Shop Foreman to the Internal Team because he held an accommodated position.[18] See Plaintiff's Response (Doc. #36) at 5. Because defendant notified plaintiff of his reassignment by May 23, 2011 at the latest, any retaliation claim arising from his alleged demotion is time-barred. See supra part III.A.

### b. Defendant's Alleged Direct Termination Of Plaintiff's Employment

Plaintiff may be asserting that defendant directly terminated his employment through the ADP Notice.[19] Because defendant has retained plaintiff on leave of absence status since June 17,

---

[18] See Plaintiff's Response (Doc. #36) at 5 ("plaintiff suffered an adverse employment action and the pretext of reassigning plaintiff to work on the internal team [sic] taking away the accommodate [sic] employment duties he had for about 5 years"); see also id. at 3, ¶ III.B.1.2.3. ("Davis demoted plaintiff to the internal team position and gave away to a new hire in June 2011[] plaintiff's former position that plaintiff could perform even with his physical limitations").

[19] Plaintiff asserts the following:

Until plaintiff received on November 29, 2011 in the mail an envelope of defendant containing information from the employee benefit provider for defendant dated November 11, 2011 that the defendant could or may terminate the plaintiff for failing to return to work after the expiration of his FMLA leave plaintiff, plaintiff deemed this notification to be a final and discrete employment discriminatory act since until then plaintiff had not had any contact with the defendant since June 16, 2011 when he went on a 12 week FMLA leave due to emotional upset he underwent by the stress put on him by Chuck Davis.

(continued…)

2011, this argument is difficult to fathom. Nonetheless, plaintiff appears to argue that because the ADP Notice states that defendant could terminate plaintiff's employment if he did not return after his FMLA leave, defendant terminated plaintiff's employment when his leave expired and he did not return to work. This is illogical. The ADP Notice merely states that plaintiff's failure to return to work *may* result in termination – not that it necessarily would or did. Defendant did not directly terminate plaintiff's employment.[20]

### c. Defendant's Alleged Constructive Termination

Plaintiff asserts that defendant constructively discharged him in retaliation for holding an accommodated position.[21] An employee who is not formally discharged from employment may

---

( . . . continued)
Plaintiff's Response (Doc. #36) at 3, ¶ II A, B (errors in original). Plaintiff's focus on the action being "final and discrete" suggests that plaintiff may believe defendant terminated plaintiff's employment directly.

[20] Plaintiff acknowledges that defendant never directly terminated his employment. See Pretrial Order (Doc. #19) at 9 ("As of either September 30, 2011 or November 29, 2011, plaintiff did not have any other leave available to him through his employer and *while never being directly advised by his employer that he had been terminated*, plaintiff applied for Kansas Unemployment Benefits." (emphasis added)).

[21] Plaintiff asserts the following:

Plaintiff told his supervisor, Chuck Davis, of his physical inability to perform any mechanical work for the new position that Chuck Davis wanted plaintiff to take and perform and was instructed by Mr. Davis that if plaintiff didn't take the new job, plaintiff would be terminated.

Plaintiff's Response (Doc. #36) at 2 ¶ 62. Plaintiff also asserts the following:

As of either September 30, 2011 or November 29, 2011, plaintiff did not have any other leave available to him through his employer and while never being directly advised by his employer that he had been terminated, plaintiff applied for Kansas Unemployment Benefits. Upon an unemployment referee hearing being held, the referee held that plaintiff had been constructively discharged by the overall change in the pay and compensation structure as well as a change in the working

(continued…)

16

be constructively discharged if the employer, by its illegal discriminatory acts, has made working conditions so difficult that a reasonable person in plaintiff's position would feel compelled to resign.  See Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986).  Essentially, plaintiff must show that he had "no other choice but to resign."  MacKenzie v. City and Cnty. of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005).  The conditions of employment must be objectively intolerable; plaintiff's subjective views of the situation are irrelevant.  Sanchez v. Denver Pub. Sch., 164 F.3d 527, 534 (10th Cir. 1998).

Plaintiff suggests that defendant constructively discharged him by replacing him as Shop Foreman and offering him a replacement position that he was unable to perform due to his injury.  See Plaintiff's Response (Doc. #36) at 2 ¶ 62.  Plaintiff's constructive discharge claim centers on his alleged demotion to the Internal Team.  Plaintiff had notice of the alleged demotion by May 23, 2011 at the latest.  Therefore, his constructive discharge claim is time-barred.  See supra part III.A; see also Green v. Donahoe, 760 F.3d 1135, 1145 (10th Cir. July 28, 2014) (Title VII constructive discharge claim begins running at date of discriminatory act, not when consequences of acts become "most painful" and plaintiff resigns).

Plaintiff also apparently argues that defendant's contact through the ADP Notice was a "discrete employment discriminatory act" which also contributed to his constructive discharge, thereby resetting the clock.  See Plaintiff's Response (Doc. #36) at 3, ¶ II.A, B.  The Court disagrees.  Again, the ADP Notice merely states that plaintiff's failure to return after the

---

( . . . continued)
> conditions and that plaintiff left work for good cause recognizable under the law which was attributable to the work of the employer by reason of the employer's violation of the work agreement.

Pretrial Order (Doc. #19) at 9 (errors in original).

expiration of his leave *may* result in termination – it did not provide notice that defendant had already terminated plaintiff's employment or was going to terminate his employment or that plaintiff's employment terminated automatically at the expiration of the FMLA leave. The ADP Notice also gave plaintiff options regarding his insurance coverage at the expiration of his leave if he failed to return to work. Nothing about the ADP Notice made plaintiff's employment intolerable. Plaintiff's receipt of the ADP Notice did not give him "no other choice but to resign." See MacKenzie, 414 F.3d at 1281. Furthermore, it is unlikely that the ADP Notice rose to the level of a minor inconvenience, much less an adverse act. The ADP Notice did not cause plaintiff humiliation, damage his reputation or harm his future employment prospects. Reinhardt v. Albuquerque Pub. Schs. Bd. Of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010) (adverse acts carry a significant risk of humiliation, damage to reputation and concomitant harm to future employment prospects). If anything, for plaintiff's benefit, defendant notified plaintiff regarding his insurance coverage options. Therefore, the ADP Notice could not have contributed to plaintiff's alleged constructive discharge.

### d. Defendant's Alleged Threat To Terminate Plaintiff's Employment

Plaintiff may be arguing that through the ADP Notice, defendant threatened to terminate his employment.[22] Plaintiff's claim fails. A mere threat of termination, if never carried out and

---

[22] Plaintiff asserts the following:

Plaintiff's notice of defendant's discrete adverse employment action toward plaintiff occurred on or about November 29, 2011 when plaintiff received notices dated November 11, 2011 though the employer and ADP Benefit Services that should he fail to return to work within 12 weeks of his FLMA leave his Welfare Benefits though the employer and ADP Benefit Services will be subject to the Company's standard leave of absence and attendance policies. That . . ." This may result in termination . . ."

(continued…)

standing alone, is not an adverse employment action.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998) (unfulfilled threats actionable under Title VII only through hostile work environment claim); Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1268 (10th Cir. 2005) (Tenth Circuit has never expressly held that unrealized threat of termination, without more, constitutes adverse employment action).  Again, plaintiff has remained on unpaid leave status since June 17, 2011.

Plaintiff has failed to identify an adverse employment action which could support a timely retaliation claim.  It is therefore unnecessary for the Court to analyze whether plaintiff could otherwise meet the elements of a prima facie claim of retaliation.

For the above reasons, defendant is entitled to summary judgment on all of plaintiff's claims against it.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion For Summary Judgment (Doc. #20) filed April 4, 2014, be and hereby is **SUSTAINED**.  The Clerk of the Court is directed to enter judgment in favor of defendant on all counts.

---

( . . . continued)
Plaintiff's Response (Doc. #36) at 1-2, ¶ 60 (errors in original).

Plaintiff also testified about his May 23, 2011 conversation with Davis as follows:

> [Davis] told me I'd been out in the shop working for way too many years with [the technicians], after all the talk at the end, we discussed the job that he told me I had to take or I was no longer employed, I told him I could not do with my arms, my previous injury, and he said if I didn't take it, I would no longer be employed.

Schmidt Dep. 212:1-8, Ex. B to Defendant's Motion For Summary Judgment (Doc. #20).  To the extent plaintiff argues that this was an adverse action, it is time-barred.

Dated this 27th day of October, 2014, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
